UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
VICTORIA GRIBBIN,

                    Plaintiff,

        - against -

NEW YORK STATE UNIFIED COURT
SYSTEM; 10TH DISTRICT SUPREME CIVIL
MATRIMONIAL COURT OF NEW YORK,
NASSAU COUNTY; SUPREME COURT OF
NEW YORK STATE, APPELLATE
DIVISION, SECOND DEPARTMENT;
EDMUND DANE; VERONICA IRWIN;
HOWARD STURIM; GEOFFERY J.
O'CONNELL; HOPE ZIMMERMAN;
JEFFREY BROWN; LAWRENCE
SCHAEFFER; and NANCY SCHER,

                    Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-6100 (PKC) (AKT)

PAMELA K. CHEN, United States District Judge:

On October 31, 2018, Plaintiff Victoria Gribbin, appearing *pro se*, filed this fee-paid complaint against Defendants New York State Unified Court System; 10th District Supreme Civil Matrimonial Court of New York, Nassau County; Supreme Court of New York State, Appellate Division, Second Department; the Honorable Edmund Dane; the Honorable Howard Sturim; Judicial Hearing Officer Geoffrey O'Connell[1]; the Honorable Jeffrey Brown; Referee Lawrence

---

[1] As a judicial hearing officer, Defendant O'Connell is a state employee for the purpose of the Court's sovereign immunity analysis. *See Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 129 (E.D.N.Y. 2013). Furthermore, "[j]udicial hearing officers are considered judges for the purpose[]" of an absolute immunity inquiry. *Id.* at 131.

1

Schaffer[2]; the Honorable Hope Zimmerman; the Honorable Nancy Scher[3] (collectively, the "Judicial Defendants"); and Veronica Irwin. Plaintiff brings claims pursuant to 42 U.S.C. §§ 1983 and 1988, the due process and equal protection clauses of the Fourteenth Amendment, and Title II of the Americans with Disabilities Act ("ADA"), challenging various decisions made by Defendants in Plaintiff's state divorce proceeding. Pending before the Court are Defendants' motions to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the basis that the Court lacks federal subject matter jurisdiction to adjudicate Plaintiff's claims and that Plaintiff fails to state a claim upon which relief can be granted. For the reasons stated below, Defendants' motions are granted in their entirety.

## BACKGROUND

**I.    Relevant Facts[4]**

Plaintiff has been involved in matrimonial litigation in the Supreme Court of New York, Nassau County, since 2008. (Complaint ("Compl."), Dkt. 1, at 19 ¶ 8.) She was divorced from her now ex-husband William J. Gribbin pursuant to a Judgement of Divorce ("JOD") on May 26,[5]

---

[2] The Court notes that Defendant Schaffer's name is spelled incorrectly in Plaintiff's Complaint. (Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Defs.' Br."), Dkt. 20-9, at 2.) Though not a judge, as a Referee, Defendant Schaffer is akin to a judge for the purpose of an absolute immunity inquiry. *See Renner v. Stanton*, No. 13-CV-1676 (DLI), 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013).

[3] The Court notes that Defendant Denise Scher is incorrectly referred to as Nancy Scher in Plaintiff's Complaint. (Defs.' Br., Dkt. 20-9, at 2.)

[4] The Court assumes the truth of the Complaint's non-conclusory factual allegations. *See Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).

[5] The Court notes that Plaintiff and Defendant Irwin disagree on the exact date that the JOD was issued. None of the parties provided a copy of the JOD. The Court adopts Plaintiff's stated date, though the resolution of this issue does not affect the Court's reasoning or the outcome of Defendants' motions.

2016 after a trial where Plaintiff represented herself. (*Id.* at 5 ¶ 12, 7 ¶ 22, 9 ¶ 28; *see also* Defendant Irwin Motion to Dismiss ("Irwin Br."), Dkt. 16, at 4.) The JOD ordered the sale of Plaintiff's marital home and the equitable distribution of Plaintiff's and her ex-husband's assets, including a three-family investment property owned by Plaintiff and her ex-husband. (*See* Compl., Dkt. 1, at 10 ¶ 32, 12 ¶ 37, 29 ¶ 45; *see also* Irwin Br., Dkt. 16, at 4–5.) At several points during the divorce litigation, Plaintiff requested various ADA accommodations. (*See, e.g.*, Compl., Dkt. 1, at 8 ¶¶ 24–25, 9 ¶¶ 27–29.) Plaintiff asserts that she has "three qualifying, non-apparent ADA class disabilities . . . that are neurologically based and are regarded as physical disabilities (a left foot injury and right foot condition both requiring surgery since 2014 and 2018, respectively)." (Plaintiff's Memorandum of Law in Opposition ("Pl.'s Br."), Dkt. 32, at 6; *see also* Compl., Dkt. 1, at 8 ¶ 24 (noting disabilities of Attention Deficit Disorder and Post-Traumatic Stress Disorder).)

Defendant Irwin was appointed as Receiver by the Honorable Edmund M. Dane of the Supreme Court of New York on May 15, 2018. (Compl., Dkt. 1, at 23 ¶ 20; *see also* Irwin Br., Dkt. 16, at 5.) Defendant Irwin was appointed to enforce the sale of the marital home and equitable distribution terms of the JOD. (*Id.*) Throughout 2018, Plaintiff repeatedly challenged the JOD as well as Defendant Irwin's requests for additional authority in order to effectuate the sale of the marital property. (*See, e.g.*, Compl., Dkt. 1, at 10 ¶¶ 30–31, 11 ¶ 33, 12 ¶ 37, 36 ¶ 65, 50 ¶ 118; *see also* Pl.'s Br., Dkt. 32, at 7.) In her challenges, Plaintiff sought to show that the JOD had been procured by fraud. (Compl., Dkt. 1, at 10 ¶ 32.)

Plaintiff's marital home was listed for sale and sold in the fall of 2018. (*Id.* at 25 ¶ 29, 28 ¶ 37, 48 ¶ 111, 49 ¶¶ 114–15; *see also* Pl.'s Br., Dkt. 32, at 7.) Plaintiff requested that the sale of the marital home be postponed so that Plaintiff could recuperate from foot surgery, but the request

was denied. (Compl., Dkt. 1, at 37 ¶ 71.) Plaintiff was required to move out of the home by December 31, 2018, or be held in contempt of court. (Pl.'s Br., Dkt. 32, at 7.)

## II. Procedural History

Plaintiff filed the instant action on October 31, 2018. (Dkt. 1.) On November 29, 2018, Plaintiff requested a temporary restraining order ("TRO") and preliminary injunction ("PI") to prevent Defendants from enforcing various orders issued in the state court matrimonial action, including the May 26, 2016 JOD. (Plaintiff's Proposed Order to Show Case, Dkt. 3, at 2.) The Honorable Joseph Bianco, then presiding over this matter, denied Plaintiff's request on November 30, 2018, finding that Plaintiff's lawsuit was likely barred by, *inter alia*, the *Rooker-Feldman* doctrine, and that the Judicial Defendants named by Plaintiff were likely entitled to absolute judicial immunity. (TRO/PI Memorandum & Order, Dkt. 4, at 3.) Plaintiff filed an interlocutory appeal of Judge Bianco's decision (Dkt. 7), which was denied by the Second Circuit on January 22, 2020 (Dkt. 35). Defendant Irwin and the Judicial Defendants filed motions to dismiss on February 12, 2019 (Dkt. 16) and March 21, 2019 (Dkt. 20), respectively. This case was reassigned to the undersigned on May 31, 2019. (May 31, 2019 Docket Order.) Defendants' motions to dismiss were fully briefed on July 26, 2019. (Dkts. 33, 34.) On February 28, 2020, Plaintiff filed a motion seeking to file an amended complaint. (Dkt. 36.) In response, the Judicial Defendants filed a letter response noting their opposition. (Dkt. 37.)

## STANDARDS OF REVIEW

### I. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate*

*Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," *Makarova*, 201 F.3d at 113. Furthermore, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotations, alterations, and citation omitted). In adjudicating a motion to dismiss for lack of subject matter jurisdiction, the court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

## II.     Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted); *see also Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012), but "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001)

5

(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Additionally, a court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Id.* at 405–06 (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Nonetheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal brackets and citations omitted).

## DISCUSSION

Plaintiff brings claims pursuant to Sections 1983 and 1988, the Fourteenth Amendment, and the ADA. However, the Court's review of the merits of Plaintiff's claims is precluded because the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. The Court also finds that, in the alternative, Plaintiff fails to state a claim against Defendants because they are immune from suit.

### I. Subject Matter Jurisdiction

The Court concludes that it lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. This principle, growing out of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that federal district courts lack subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced

and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In *Hoblock v. Albany County Board of Elections*, the Second Circuit clarified the four requirements for application of the *Rooker-Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and brackets omitted). Each of these conditions is met in this case.

First, Plaintiff lost in state court when that court entered the May 26, 2016 JOD and orders to enforce the Judgment that, *inter alia*, forced her to sell her marital home. (Compl., Dkt. 1, 12 ¶ 37, 36 ¶¶ 65–66, 50 ¶ 123.) *See, e.g.*, *Kramer v. Dane*, No. 17-CV-5253 (JFB) (SIL), 2018 WL 4489284, at *2 (E.D.N.Y. Sept. 19, 2018) (finding that plaintiffs were "'state court losers' for purposes of the *Rooker-Feldman* doctrine" when "various state court decisions and judgments deprived them of . . . marital property"). Second, Plaintiff's injury, *i.e.*, the loss of her home, was caused by the state court judgment. (*See* Compl., Dkt. 1, at 13 ¶ 38, 25 ¶ 28, 29 ¶ 42.) Third, in order to grant Plaintiff's requested relief, which includes a declaratory judgment stating that "Defendants' actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws," an "injunction barring Defendants from continuing their illegal acts," and damages (Compl., Dkt. 1, at 55), this Court would have to determine that the state court's judgment was entered in error. *See Sundwall v. Leuba*, 28 F. App'x 11, 13 (2d Cir. 2001) (summary order) (noting that *Rooker-Feldman* precludes injunctive relief when it "would result in the reversal or modification of a state court judgment"); *Lomnicki v. Cardinal McCloskey Servs.*,

7

No. 04-CV-4548 (KMK), 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007) ("Plaintiff does not avoid *Rooker-Feldman* by seeking damages instead of injunctive relief. In order to award damages to Plaintiff, the Court would have to review the decision of the [state] [c]ourt."). Fourth, Plaintiff seeks review of the JOD, which was entered by the state court on May 26, 2016 (Compl., Dkt. 1, at 5 ¶ 12), well before Plaintiff filed the instant action on October 31, 2018 (*see generally* Compl., Dkt. 1).[6] For these reasons, *Rooker-Feldman* applies, and this Court lacks jurisdiction to address Plaintiff's claims. *See Kramer*, 2018 WL 5077164, at *5 (finding *Rooker-Feldman* satisfied when "[p]laintiffs allege that an overarching racketeering enterprise tainted the state court action, and those involved conspired to, among other things, unlawfully seize her marital property and deny her custody of her children" because "[p]laintiffs' claims thus hinge on the allegation of unlawful conduct in her underlying state court action, and they invite th[e] [c]ourt to review the merits of that judgment"); *Oxman v. Oxman*, No. 16-CV-1304 (DJS), 2017 WL 4078114, at *3 (D. Conn.

---

[6] Plaintiff also seeks review of orders entered after May 26, 2016 that enforced the May 2016 JOD. (*See, e.g.*, Compl., Dkt. 1, at 36 ¶¶ 65–66 (noting that "orders [dated] on or about May 17, 2018, July 13, 2018 and September 5, 2018 to enforce certain terms of the Judgment of Divorce . . . further damage[d] Plaintiff and compound[ed] the injury represented by the Judgment of Divorce itself").) The Court notes that these orders were also entered before Plaintiff initiated the instant action. Furthermore, the Court finds that Plaintiff's apparent refusal to abide by the state court judgment, necessitating further orders to enforce the JOD, does not preclude the application of the *Rooker-Feldman* doctrine. The "purpose [of *Rooker-Feldman*] would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 348 (E.D.N.Y. 2010). Likewise, here, Plaintiff cannot avoid the otherwise proper application of this doctrine to her claims merely because her actions in the state court litigation meant that the state court had to issue further orders enforcing its original judgment. Plaintiff does not appear to allege any injury from these subsequent orders that is not related to the original May 26, 2016 JOD. *Cf. Wiltz v. N.Y. Univ.*, No. 18-CV-123 (GHW) (SDA), 2019 WL 721658, at *6 (S.D.N.Y. Feb. 1, 2019) (finding *Rooker-Feldman* applied to housing court judgment ordering eviction even if eviction had not occurred by the time plaintiff filed his federal lawsuit), *report and recommendation adopted*, 2019 WL 720700 (S.D.N.Y. Feb. 19, 2019). Accordingly, the fourth requirement of the *Rooker-Feldman* doctrine is satisfied as to the state court's post-May 26, 2016 enforcement orders.

Sept. 13, 2017) (finding *Rooker-Feldman* satisfied because, although plaintiff's allegations were "couched in terms of fraud and violations of constitutional rights, it is apparent that the injuries the plaintiff claims she has sustained all relate back to the Judgment of the New York Supreme Court entered in the plaintiff's divorce case in 2006 and the consequences flowing from that Judgment, e.g., the transfer of [property] to [plaintiff's ex-husband]").

Plaintiff argues that *Rooker-Feldman* does not bar the instant action because "Plaintiff asserts federal civil rights claims arising out of collusion, discrimination and procedural violations that occurred during state court litigation." (Pl.'s Br., Dkt. 32, at 23.) Plaintiff's argument is unavailing. "[A] plaintiff cannot circumvent *Rooker-Feldman*'s bar by recasting [her] claims as civil rights violations . . . ." *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753 (JS) (AYS), 2019 WL 2437849, at *4 (E.D.N.Y. June 10, 2019) (citing *Davidson v. Garry*, 956 F. Supp. 265, 269 (E.D.N.Y. 1996)); *Richter v. Conn. Judicial Branch*, No. 12-CV-1638 (JBA), 2014 WL 1281444, at *8 (D. Conn. Mar. 27, 2014) (finding *Rooker-Feldman* satisfied when plaintiff alleged, *inter alia*, that state court "judgments were the result of discrimination under the ADA and have caused her injury"), *aff'd*, 600 F. App'x 804 (2d Cir. 2015) (Mem); *see also Skipp v. Conn. Judicial Branch*, No. 14-CV-141 (JAM), 2015 WL 1401989, at *5 (D. Conn. Mar. 26, 2015) (collecting cases). "Indeed, even if the order by the state court was wrongfully procured, as the plaintiff alleges, the order remains in full force and effect until it is reversed or modified by an appropriate state court." *Huszar v. Zeleny*, 269 F. Supp. 2d 98, 103 (E.D.N.Y. 2003). Accordingly, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction.

## II. Sovereign Immunity as to the Judicial Defendants

Furthermore, even if *Rooker-Feldman* did not deprive the Court of subject matter jurisdiction, Plaintiff's complaint as to the Judicial Defendants[7] would still be dismissed because the Eleventh Amendment of the United States Constitution bars suits against the State and State officials in their official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although not clear from the terms of the [Eleventh] [A]mendment, the Supreme Court has interpreted this language to bar suit against a state by its own citizens." *Islander E. Pipeline Co., LLC v. Conn. Dep't of Envtl. Prot.*, 482 F.3d 79, 88–89 (2d Cir. 2006); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). New York's sovereign immunity extends to the New York State Unified Court System. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009)), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (summary order). Accordingly, absent an express waiver of sovereign immunity, or a clear abrogation of that immunity by Congress, the Eleventh Amendment generally bars Plaintiff from suing courts within the New York State Unified Court system, as well as state judicial officers in their official capacities, in federal court for legal and equitable relief. *See Zeigler v. New York*, 948 F. Supp. 2d 271, 282 (N.D.N.Y. 2013); *McKnight*, 699 F. Supp. 2d at 521; *see also Martinez v. Queens Cty. Dist. Att'y*, No. 12-CV-6262 (RRM) (RER), 2014 WL 1011054, at *8 n.8 (E.D.N.Y.

---

[7] The Judicial Defendants includes all Defendants except Veronica Irwin. Though it is unclear whether Defendant Schaffer, as a Referee, is a state official, the Court notes that, even if he is not entitled to sovereign immunity, he would still be entitled to absolute judicial immunity as discussed *supra* n.2. Thus, Plaintiff's suit against him would still be barred.

Mar. 17, 2014) ("[P]laintiff's claims against the state courts and the individual judges, to the extent that plaintiff is suing the judges in their official capacities, are barred under the Eleventh Amendment."), *aff'd*, 596 F. App'x 10 (2d Cir. 2015) (summary order).

Plaintiff argues that Defendants are not immune because they have failed to comply with Title II of the ADA (Pl.'s Br., Dkt. 32, at 19; *see also id.* at 15 (arguing that Defendants "violate[d] their mandated Title II ADA duties by denying requested, reasonable accommodations" made by the Plaintiff)), which would abrogate the Judicial Defendants' sovereign immunity. Title II of the ADA forbids discrimination against persons with disabilities in "public services, programs, and activities." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004). "The Supreme Court [in *Tennessee v. Lane*] has held that Title II pierces a state's sovereign immunity as applied to cases implicating a plaintiff's fundamental right of access to the courts." *McKnight*, 699 F. Supp. 2d at 522 (citing *Tennessee*, 541 U.S. at 533–34). "Since *Lane*, courts have disagreed on the conditions required to abrogate sovereign immunity under Title II." *Id.* Some courts have found that a "Title II claimant [must] establish the violation of a fundamental right" in order to abrogate sovereign immunity, while others have concluded that a "Title II violation must be motivated by discriminatory animus or ill will based on the plaintiff's disability." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff fails to establish abrogation under either test. Though access to the courts is a fundamental right, *see Tennessee*, 541 U.S. at 533–34, Plaintiff's allegations do not support a claim that she was denied access to the courts as a result of her disability. As the long history of the state court proceeding shows, Plaintiff has had significant access to the courts. (*See, e.g.*, Compl., Dkt. 1, at 19 ¶ 8 (noting that Plaintiff's divorce proceeding began in 2008).) Rather, Plaintiff's disagreement with Defendants is that, in deciding whether her legal claims had merit, their decisions did not adequately consider Plaintiff's disabilities. She argues that

11

> the trial court was legally *obligated* to apply the lower standard [that would have entitled Plaintiff to a larger share of marital assets] in the Divorce Litigation because, under the federal ADA, being subjected to a lesser degree of domestic violence would be enough to establish her right to reasonable accommodations if such violence resulted in a qualified disability – as it did in this case.

(Pl.'s Br., Dkt. 32, at 9.) However, access to the courts does not ensure Plaintiff her preferred outcome; it only ensures that Plaintiff has the same opportunity as any non-disabled citizen to petition a court for redress. *See Wiltz*, 2019 WL 721658, at *9 (noting that "[plaintiff]'s dissatisfaction with the housing court's rulings or the outcome of the proceedings are not sufficient to show that he was excluded from participating"); *see also Cosby v. Tawanna*, No. 19-CV-401 (MPS), 2019 WL 1921709, at *6 (D. Conn. Apr. 30, 2019) ("The statute is intended to 'eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied.'" (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998))).[8]

Plaintiff has also failed to allege any non-conclusory allegations that Defendants' behavior was motivated by discriminatory animus or ill will towards her disabilities. At most, Plaintiff has alleged that Defendants were aware of her disabilities, given her numerous requests for accommodation. (*See, e.g.*, Compl., Dkt. 1, at 22 ¶ 18.) Mere knowledge of a litigant's disability is plainly insufficient to undermine a state official's sovereign immunity. Indeed, even assuming *arguendo* that the Judicial Defendants had knowingly violated Title II, this would still be insufficient to establish the requisite discriminatory animus to pierce sovereign immunity.

---

[8] Plaintiff also alleges that Defendants violated Title II by refusing to extend court deadlines relating to various motion briefing schedules. (*See, e.g.*, Compl., Dkt. 1, 8 ¶ 25, 15 ¶ 43.) Even assuming, *arguendo*, that the failure to provide such extensions implicates Plaintiff's fundamental right of access to the courts, her Title II claim still fails because she does not allege that the failure to provide her this accommodation was due to her disability. "The fact that plaintiff has a disability does not automatically turn all defendant's conduct into disability discrimination." *Wiltz*, 2019 WL 721658, at *10 (internal quotation marks omitted). "[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013).

"[M]erely alleging knowledge of an ADA violation is insufficient to abrogate sovereign immunity[.]" *Russell v. New York*, No. 18-CV-8543 (VSB), 2019 WL 4805687, at *5 (S.D.N.Y. Sept. 30, 2019) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001)). Accordingly, Plaintiff has failed to show that the Judicial Defendants' sovereign immunity is abrogated as a result of her Title II claims.

Finally, Plaintiff appears to invoke the *Ex parte Young* doctrine, which would also prevent the Judicial Defendants from invoking sovereign immunity. (*See* Pl.'s Br., Dkt. 32, at 20 (noting that "Defendants themselves concede that Plaintiff 'appears to be seeking future injunctive relief'").) Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks and citation omitted). The *Ex parte Young* exception "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted). "In order to determine whether the *Ex parte Young* exception allows [a] plaintiff['s] suit against the officials, this Court must first determine whether the complaint alleges an ongoing violation of federal law and second, whether [the p]laintiff[] seek[s] relief properly characterized as prospective." *N.Y.S. Corr. Officers & Police Benev. Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 125 (N.D.N.Y. 2012) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff seeks both a declaratory judgment and injunctive relief against the Judicial Defendants. However, the specific relief Plaintiff seeks is not prospective: she asks for a

declaratory judgment stating that "Defendants' actions *were* illegal" and "an injunction barring Defendants from continuing their illegal acts." (Compl., Dkt. 1, at 55 (emphasis added).) A declaratory judgment that seeks to declare past actions illegal is not prospective relief. *See N.Y.S. Corr. Officers & Police Benev. Ass'n, Inc.*, 911 F. Supp. 2d at 129 ("[D]eclaratory relief is not permitted under *Ex parte Young* when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective."). Likewise, the injunctive relief that Plaintiff seeks, though phrased as a bar on "continuing" conduct, is also not prospective. Not only does Plaintiff fail to identify in a non-conclusory manner the "illegal acts" that Defendants will or are likely to commit in the future, but any such potential acts would be the consequences of the past alleged violation, *e.g.*, the state court Judgment of Divorce. This is not the same as alleging an ongoing constitutional violation.[9] As the Second Circuit explained in a comparable context in *Nat'l R.R. Passenger Corp. v. McDonald*:

---

[9] Furthermore, to the extent Plaintiff could allege ongoing violations of federal law, she would run afoul of yet another jurisdictional bar, *Younger* abstention. Under *Younger* abstention, "federal courts are forbidden from enjoining ongoing state proceedings" when "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *McKnight*, 699 F. Supp. 2d at 520 (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)). Here, all three conditions would be met. First, given that Plaintiff's claims focus on her state-court divorce proceedings, if there were alleged ongoing violations of federal law, then those proceedings would necessarily still be pending. Second, issues involving domestic relations, such as child custody and divorce proceedings, implicate an important state interest. *See, e.g.*, *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."); *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (holding that plaintiff's lawsuit challenging the constitutionality of aspects of his divorce proceeding "implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which the states have an especially strong interest." (internal quotation marks and citation omitted)). Third, the state proceeding offers Plaintiff an adequate opportunity for review of her constitutional or civil rights claims because she can raise them by appealing the JOD to New York's Appellate Division. *McKnight*, 699 F. Supp. 2d at 521 (noting that plaintiff could challenge the constitutionality of New York Domestic Relations Law and any state court orders by appealing to the Appellate

> The taking [*i.e.*, the alleged violation of plaintiff's due process rights by the state court,] has ongoing *effects*, to be sure, but a discrete act transferred record title from [plaintiff] to the [state]. Any use of the property by the state, its present record owner, is simply a by-product of the taking itself. To characterize this as "prospective" relief would permit [plaintiff] to challenge the state's taking at any point in the future—even decades after the appropriation—and surmount the Eleventh Amendment bar. However, any such holding would obliterate the bar on retrospective relief created by the *Ex parte Young* doctrine and render a state liable for *past* violations of federal law, which is constitutionally impossible.

978 F. Supp. 2d 215, 231–32 (S.D.N.Y. 2013), *aff'd*, 779 F.3d 97 (2d Cir. 2015). Therefore, *Ex parte Young* does not prevent the Judicial Defendants from invoking sovereign immunity.

Accordingly, given that the Judicial Defendants are entitled to sovereign immunity[10] and Plaintiff has failed to assert any claims that prevent the invocation of this immunity, to the extent *Rooker-Feldman* does not bar Plaintiff's action, the Court is nonetheless required to dismiss Plaintiff's action as to the Judicial Defendants.

---

Division). Accordingly, to the extent Plaintiff could show that *Ex parte Young* prevents Defendants from asserting sovereign immunity because there are ongoing violations of federal law, she still would not be entitled to relief. *See, e.g.*, *Martinez*, 2014 WL 1011054, at *8 n.8 (finding that plaintiff's child custody proceedings were barred by the *Younger* abstention doctrine "to the extent that plaintiff is seeking to enjoin ongoing family court proceedings"); *see also McKnight*, 699 F. Supp. 2d at 524–25 (noting that plaintiff's argument that judicial immunity did not bar his claims for injunctive relief because the requested relief was prospective failed because *Younger* abstention required dismissal of those claims for injunctive relief).

[10] Plaintiff appears to assert that she is bringing her claims against the individual Judicial Defendants only in their official capacities. (*See* Compl., Dkt. 1, at 51 (noting that "Defendants who are judges [are] sued in their professional capacities").) Claims brought against judges in their official capacities are generally barred by sovereign immunity, as is the case here for the reasons discussed *supra*, whereas claims brought against judges in their individual capacities are likely barred by absolute judicial immunity. *See Martinez*, 2014 WL 1011054, at *8 n.8. The Court notes that, to the extent Plaintiff intended to bring her claims against the individual Judicial Defendants in their individual capacity as well, those claims would be barred by judicial immunity, for the reasons described *infra*.

**III.    Judicial Immunity as to Defendant Irwin**

Defendant Irwin, as a court-appointed receiver, is not a state official and therefore not entitled to sovereign immunity. However, Plaintiff's claims against Defendant Irwin would also be dismissed even if *Rooker-Feldman* did not bar the Court's exercise of subject matter jurisdiction because Defendant Irwin is entitled to judicial immunity.[11]

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Forrester v. White*, 484 U.S. 219, 225–26 (1988)). This absolute immunity extends to requests for injunctive and declaratory relief as well. *See McKnight*, 699 F. Supp. 2d at 524–25 ("[U]nder amendments to 42 U.S.C. § 1983, 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" (quoting 42 U.S.C. § 1983, *as amended by* Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104–317, 110 Stat. 3847, 3853 (1996))); *LeDuc v. Tilley*, No. 05-CV-157 (MRK), 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order.").

Though Defendant Irwin is not a judge, "[a] private actor may be afforded the absolute immunity ordinarily accorded to judges performing their authorized judicial functions if the private actor's role is 'functionally comparable' to the roles of those judges, or his acts are integrally

---

[11] The Court notes that the question of whether Defendant Irwin is entitled to judicial immunity applies only to Plaintiff's Section 1983 claims, as there is no individual liability under the ADA. *Garcia*, 280 F.3d at 107 ("Title II of the ADA . . . [does not] provide[] for individual capacity suits against state officials.").

related to an ongoing judicial proceeding." *Bliven*, 579 F.3d at 210 (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)) (citing *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988)). Here, Plaintiff's only allegations against Defendant Irwin relate to Irwin's role as a court-appointed receiver where she was required, by the state court, to effectuate the terms of the JOD, such as the sale of the two homes owned by Plaintiff and her ex-husband. (Compl., Dkt. 1, at 23 ¶ 20; *see also* Irwin Br., Dkt. 16, at 5.) Irwin is therefore entitled to judicial immunity for these acts. *See MacKay v. Crews*, No. 09-CV-2218 (JFB) (ARL), 2009 WL 5062119, at *12 n.19 (E.D.N.Y. Dec. 16, 2009) ("If a court-appointed receiver is acting in accordance with a judicial mandate, he or she is immune from suit."). Furthermore, though Plaintiff's allegations suggest that Defendant Irwin acted in bad faith (*see, e.g.*, Pl.'s Br., Dkt. 32, at 7 (noting that Defendant Irwin sent Plaintiff "a threatening email to hold her in contempt")), the absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action [she] took was in error . . . or was in excess of [her] authority." *Mireles*, 502 U.S. at 11, 13 (internal quotation marks and citations omitted). Finally, Plaintiff has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. Defendant Irwin is therefore entitled to absolute judicial immunity.

Accordingly, to the extent *Rooker-Feldman* does not bar Plaintiff's action against Defendant Irwin, the Court is nonetheless required to dismiss Plaintiff's claims against Defendant Irwin based on judicial immunity.

IV. **Motion to Amend**

Plaintiff also seeks to file an amended complaint "to give the Court an accurate account of the facts underlying this matter," given that "the passage of time has rendered some of the pleadings obsolete with respect to specific facts." (Plaintiff's Memorandum of Law in Support of

her Motion to Amend, Dkt. 36, at 7.) In general, "[a] *pro se* complaint is to be read liberally[, and] the [C]ourt should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, however, given the allegations in Plaintiff's original complaint and the fundamental nature of her claims, the Court finds that allowing any further chances to replead would be futile. It is clear from the allegations in Plaintiff's complaint that she is seeking relief from a state court judgment of divorce to allow her to stay in her marital home. None of the new facts included in Plaintiff's proposed Amended Complaint alter the relief that Plaintiff is seeking or her basic reason for seeking it. For the reasons discussed *supra*, the Court does not have the ability to give Plaintiff the relief she seeks. Therefore, "[t]he problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." *Cuoco*, 222 F.3d at 112.

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are granted, and Plaintiff's complaint is dismissed in its entirety. Plaintiff's motion to amend her complaint is also denied as futile. The Clerk of Court is respectfully directed to enter judgment and terminate this action accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
      Brooklyn, New York