UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VICTORIA GRIBBIN,

                Plaintiff,

      - against -

NEW YORK STATE UNIFIED COURT
SYSTEM; 10TH DISTRICT SUPREME CIVIL
MATRIMONIAL COURT OF NEW YORK,
NASSAU COUNTY; SUPREME COURT OF
NEW YORK STATE, APPELLATE
DIVISION, SECOND DEPARTMENT;
EDMUND DANE; VERONICA IRWIN;
HOWARD STURIM; GEOFFERY J.
O'CONNELL; HOPE ZIMMERMAN;
JEFFREY BROWN; LAWRENCE
SCHAEFFER; and NANCY SCHER,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-6100 (PKC) (AKT)

PAMELA K. CHEN, United States District Judge:

Pending before the Court is Plaintiff's motion to vacate the Court's March 31, 2020 Memorandum and Order ("March 31 M&O") (Dkt. 39), and its corresponding Judgment (Clerk's Judgment, Dkt. 40), dismissing Plaintiff's *pro se* complaint in its entirety and denying Plaintiff leave to amend (Dkt. 42). Plaintiff also seeks an order inviting interpretive guidance from the United States Department of Justice. (Amended Memorandum in Support of Plaintiff's Motion to Vacate ("MTV"), Dkt. 44.) For the reasons stated below, Plaintiff's motion is denied in its entirety.

## BACKGROUND

The Court assumes the parties' familiarity with the issues in this litigation and with the March 31 M&O. Briefly, however, Plaintiff was divorced from her now ex-husband in May 2016 pursuant to a Judgment of Divorce ("JOD"), issued in the Supreme Court of New York, Nassau County, after a lengthy divorce litigation that began in 2008. (Complaint ("Compl."), Dkt. 1, at 5

1

¶ 12, 19 ¶ 8.) At several points during the divorce litigation, Plaintiff requested various accommodations under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act for her foot conditions, post-traumatic stress disorder ("PTSD"), and attention deficit disorder. (*See, e.g.*, *id.* at 8 ¶¶ 24–25, 9 ¶¶ 27–29, 37 ¶¶ 70–73.) Plaintiff alleges that these disabilities resulted in some part from her experience of "coercive control" at the hands of her ex-husband through his "non-compliance with various court orders and frivolous disputes regarding the equitable distribution, monetary orders[,] and custody orders[] sought by Plaintiff" in the divorce litigation. (*See* MTV, Dkt. 44, at ECF[1] 13.) Plaintiff contends that this "coercive control" amounted to domestic violence but was not recognized as such by New York courts, which apply an "'egregious' physical DV standard." (Compl., Dkt. 1, at 4–5 ¶ 11, *see also* MTV, Dkt. 44, at ECF 12–13.)

While Plaintiff was represented by counsel for "7.5 years" of her divorce litigation, she fired her counsel in June 2015 and chose to represent herself *pro se* at the trial scheduled for October of that year in New York State Supreme Court, Nassau County. (*Id.* at 7 ¶ 22, 8 ¶ 25, 20 ¶ 12, 33 ¶ 53.) At a June 2015 hearing, Plaintiff requested but was denied additional time to prepare for the October trial. (*Id.* at 7 ¶ 22, 8 ¶ 25.) After trial, the divorce court entered the JOD which, *inter alia*, ordered the sale of Plaintiff's marital home. (*See id.* at 5 ¶ 12.) Plaintiff challenged the provisions of the JOD repeatedly for the next two years. (*See, e.g.*, *id.* at 10 ¶¶ 30–32, 11 ¶ 33, 12 ¶ 37, 36 ¶ 65, 50 ¶ 118.)

Plaintiff filed the Complaint in this case on October 31, 2018, and subsequently and unsuccessfully sought injunctive relief. (Dkts. 1, 3, 35.) Defendants filed motions to dismiss in

---

[1] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

2019 (Dkts. 16, 20), and on February 28, 2020, Plaintiff filed a motion seeking to file an amended complaint (Dkt. 36). On March 31, 2020, the Court granted Defendants' motions to dismiss in their entirety, finding that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine and that the Complaint failed to state a claim because Defendants are immune from suit. (*See* March 31 M&O, Dkt. 39, at 6.) The Court also denied Plaintiff leave to amend her complaint, finding that any such amendment would be futile. (*Id.* at 17–18.) The Clerk of Court entered a judgment the same day dismissing the Complaint. (Dkt. 40.) On April 27, 2020, Plaintiff filed the instant motion seeking to vacate the Court's dismissal, as well as asking the Court to solicit guidance from the Department of Justice in interpreting how the ADA should be applied to matrimonial cases involving allegations of domestic violence.[2] (MTV, Dkt. 44, at ECF 25–27.)

## STANDARD OF REVIEW

"Reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[3] *Coventry Capital US LLC v. EEA Life*

---

[2] Plaintiff submitted an Amended Memorandum of Law in Support of her Motion to Vacate correcting various typographical errors on May 8, 2020. The Court considers and cites to the amended version of her Memorandum of Law.

[3] Plaintiff characterizes her motion as a "motion to vacate" "pursuant to Fed. R. Civ. P. 59(e)." (MTV, Dkt. 44, at ECF 4, 9.) The Court notes that generally, motions for *vacatur* are brought under Rule 60(b), while motions for reconsideration are brought under Rule 59(e) and/or Local Rule 6.3, as well as Rule 60(b). *See, e.g.*, *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 35 (2d Cir. 2020) (summary order) (discussing standards for "reconsideration under Rule 59 or vacatur under Rule 60(b)"); *Sec. & Exch. Comm'n v. Craig Scott Capital, LLC*, No. 16-CV-4757 (SJF) (AYS), 2020 WL 435034, at *2 (E.D.N.Y. Jan. 28, 2020) ("Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3." (citation omitted)). Since Plaintiff seeks a reevaluation of the reasons her complaint was dismissed in the hopes that such a reconsideration will lead to *vacatur* of the judgment dismissing her complaint, the Court construes Plaintiff's motion as one seeking reconsideration under Rules 59(e) and 60(b). *See In re CCS.Com.USA, Inc.*, No. 18-17-77476 (AST), 2018 WL 4042860, at *3 (Bankr. E.D.N.Y. Aug. 23, 2018) (construing motion to vacate as motion to reconsider under Rules 59(c), 60(b), and Local Rule 6.3). Additionally, because a "document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court considers Plaintiff's motion under Local Rule 6.3, even though it was filed outside the

*Settlements Inc.*, ___ F. Supp. 3d ___, 2020 WL 638524, at *4 (S.D.N.Y. 2020) (internal quotation marks and citation omitted) (discussing reconsideration under Rules 59(e) and Local Rule 6.3).[4] A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). "The major grounds for justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, No. 15-CV-10154 (PAE), 2020 WL 2115344, at *1–2 (S.D.N.Y. May 3, 2020) (internal quotation marks omitted) (citing, *inter alia*, *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "[A]rguments raised for the first time on reconsideration are not proper grounds for reconsideration." *Pall Corp. v. 3M Purification Inc.*, No. 97-CV-7599, 03-CV-92 (PKC), 2015 WL 5009254, at *1 (E.D.N.Y. Aug. 20, 2015). "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Norton v. Town of Islip*, No.

---

14-day period provided for by that rule. *See Tang v. Visnauskas*, No. 19-CV-508 (PKC) (PK), 2019 WL 6716741, at *1 (E.D.N.Y. Dec. 10, 2019) ("Although filed after the 14-day period provided for under Local Rule 6.3, given Plaintiff's *pro se* status, the Court has considered . . . [plaintiff's] motion[.]"). Nevertheless, as discussed herein, the Court finds that relief is inappropriate under all three rules.

[4] "The standards for relief under Local [] Rule 6.3 and Rule 59(e) are identical." *Lucio v. N.Y.C. Dep't of Educ. & Marie Douyon*, No. 12-CV-247 (DAB), 2013 WL 12084546, at *1 (S.D.N.Y. May 16, 2013), *aff'd sub nom. Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3 (2d Cir. 2014) (internal alterations and quotations omitted).

12-CV-4463 (PKC), 2016 WL 264930, at *2 (E.D.N.Y. Jan. 21, 2016) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)), *aff'd*, 678 F. App'x 17 (2d Cir. 2017).

Similarly, relief from a final judgment under Rule 60(b) is available in six circumstances:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied . . . or [it] is no longer equitable that the judgment should have prospective application; and (6) any other reason justifying relief from the operation of the judgment.

*Canale v. Manco Power Sports, LLC*, No. 06-CV-6131 (PKL), 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010) (internal quotation marks and citation omitted). "Motions for relief under Rule 60(b) are disfavored, and are reserved for exceptional cases." *Crawford v. Franklin Credit Mgmt., Corp.*, No. 08-CV-6293 (JFK), 2013 WL 2951957, at *1 (S.D.N.Y. June 14, 2013) (citation omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re Sanofi Sec. Litig.*, No. 14-CV-9624 (PKC), 2016 WL 3566233, at *1 (S.D.N.Y. June 24, 2016) (quoting *Shrader*, 70 F.3d at 257). "A Rule 60 motion may not be used 'simply to relitigate matters settled by the original judgment.'" *MAVL Capital, Inc. v. Marine Transp. Logistics, Inc.*, 771 F. App'x 56, 57 (2d Cir. 2019) (summary order) (quoting *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984)).

5

**DISCUSSION**

Plaintiff does not identify any "intervening change in controlling law," "new evidence," "clear error," or "manifest injustice"[5] in seeking reconsideration of the Court's March 31 M&O.[6] *See Focus Prods. Grp.*, 2020 WL 2115344, at *1. Nor does she allege fraud (in the instant litigation), or a void or satisfied judgment as appropriate for *vacatur* under Rule 60(b). *See Canale*, 2010 WL 2771871, at *2. Rather, her motion largely repeats the arguments raised in her opposition to Defendants' motions to dismiss (*see* Plaintiff's Memorandum of Law in Opposition ("Pl.'s MTD Br."), Dkt. 32), which she claims were "overlooked" by the Court (MTV, Dkt. 44, at ECF

---

[5] The Court acknowledges the many challenges faced by Plaintiff, which, in addition to her disabilities, include multiple years of abusive treatment by her husband, loss of her marital home, financial difficulties, and sole childcare responsibilities for children with multiple disabilities. (*See, e.g.*, Compl., Dkt. 1, at 30 ¶ 47, 38 ¶ 83, 43 ¶ 96.) However, Plaintiff's sympathetic circumstances do not permit the Court to overlook its own limited subject matter jurisdiction or Defendants' immunity from suit. (*See* March 31 M&O, Dkt. 39); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753 (JS) (AYS), 2019 WL 2437849, at *2 (E.D.N.Y. June 10, 2019) ("[U]nder the domestic relations exception, 'divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds.'") (quoting *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)); *see also Sigmon, Tr. for Hindin v. Goldman Sachs Mortg. Co.*, No. 12-CV-03367 (ALC), 2019 WL 970943, at *4 (S.D.N.Y. Feb. 28, 2019) (finding that while courts "have not defined precisely what constitutes manifest injustice," parties seeking reconsideration for manifest injustice bear a "high burden") (internal citation and punctuation omitted). Furthermore, Plaintiff has had the opportunity, of which she availed herself over the course of the more than seven-year divorce litigation in state court, to present evidence regarding these challenges in her effort to obtain a favorable divorce decree.

[6] In addition to seeking *vacatur* of the Court's March 31 M&O and the corresponding Judgment, Plaintiff also asks that the Court "invite interpretive guidance" on the issues in the case from the United States Department of Justice ("DOJ"), and order a DOJ compliance review of Defendants' conduct. (*See* MTV, Dkt. 42-1, at 24; Plaintiff's Amended Reply Memorandum of Law in Support of Her Motion to Vacate ("Pl.'s Am. Rep."), Dkt. 48, at ECF 11.) While Plaintiff cites 42 U.S.C. § 2000a-3(a) for the principle that a district court may grant the Attorney General leave to intervene in an appropriate case (*see* MTV, Dkt. 44, at ECF 25; Pl.'s Am. Rep., Dkt. 48, at ECF 11), the Attorney General has made no request to intervene in this case. Even if the Court believed that such intervention or guidance were appropriate, it is unaware of any mechanism by which it might invite such intervention or guidance from the DOJ, and declines to do so.

6

14 (insisting that the arguments articulated in both briefs "militate[] in favor of the opposite conclusion")).

"[A] motion for reconsideration may not be used as a vehicle for relitigating issues already decided by the Court," *Dekom v. Mae*, No. 17-CV-2712 (RRM) (ARL), 2019 WL 4696289, at *1 (E.D.N.Y. Sept. 26, 2019) (citation and alterations omitted); *see Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060 (CM) (KHP), 2019 WL 6977157, at *3 (S.D.N.Y. Dec. 19, 2019) (finding that it would be a waste of the court's limited judicial resources to merely re-enunciate its findings on arguments already raised by the party seeking reconsideration, and that "recycled arguments based on previously-presented case law [do not] establish clear error or manifest injustice")). Although the Court does not fully restate its conclusions on issues already discussed in depth in its March 31 M&O, it reiterates the central ones in light of Plaintiff's *pro se* status.[7]

## I. The *Rooker-Feldman* Doctrine

In its March 31 M&O, the Court found that Plaintiff's claims were barred by the *Rooker-Feldman* doctrine. (*See* March 31 M&O, Dkt. 39, at 6.) Plaintiff's motion to vacate contends that the *Rooker-Feldman* doctrine does not bar her "federal civil rights claims arising out of collusion, discrimination and procedural violations that occurred during state court litigation" because those claims were not themselves raised and litigated in the prior litigation.[8] (MTV, Dkt. 44, at ECF

---

[7] While Plaintiff is conducting this action *pro se*, she was assisted by a "limited scope attorney" in drafting her briefing on this motion. (*See* MTV, Dkt. 44, at ECF 2; Pl.'s Am. Rep., Dkt. 48, at ECF 2.)

[8] Plaintiff argues that because her claims are not subject to collateral estoppel or *res judicata*, they cannot be barred by the *Rooker-Feldman* doctrine. (MTV, Dkt. 44, at ECF 21.) While the Court does not examine whether either collateral estoppel or *res judicata* apply to Plaintiff's claims, it notes that *Rooker-Feldman* is distinct from those doctrines and provides an independent basis for dismissing claims that were previously adjudicated and resolved in state court. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 92 (2d Cir. 2005) ("[T]he narrow *Rooker–Feldman* inquiry is distinct from the question whether claim preclusion (res judicata) or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit.").

7

21.) This is the same argument Plaintiff made in her opposition to Defendants' motions to dismiss—which the Court rejected—and thus provides no basis for reconsideration. (*See* Pl.'s MTD Br., Dkt. 32, at 18.) The Court further explains that "the fact that Plaintiff is alleging a new [civil rights] claim . . . does not change the injury about which she complains," which resulted from the decision of the state court. *Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876 (CS), 2016 WL 4540837, at *11 (S.D.N.Y. Aug. 29, 2016) (internal quotation omitted); *see also Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (KMK), 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007) (plaintiff who sought damages for discrimination by the family court, rather than review of family court's determination, was barred on *Rooker-Feldman* grounds because her injury was "caused by the Family Court judgment"). Even assuming *arguendo* that Plaintiff had adequately alleged a violation of her due process rights at the state court level,[9] the Court would be constrained by *Rooker-Feldman* to avoid reviewing the state court judgment. (*See* March 31 M&O, Dkt. 39, at 9 (collecting cases).)

---

[9] Plaintiff claims that she has adequately pled a constitutional violation because her complaint alleges that "Defendants failed to offer [Plaintiff] a legally required hearing" in violation of her due process rights. (MTV, Dkt. 44, at ECF 22.) It appears that the "legally required hearing" to which Plaintiff refers is the "full fraud hearing" that Plaintiff requested and was denied when she sought a temporary restraining order ("TRO") against the enforcement of the state court's order to enforce the JOD and marital home sale. (*See* Compl., Dkt. 1, at 10 ¶¶ 30–32, 11 ¶ 33, 25 ¶ 28.) While due process requires that state actors "offer a meaningful opportunity to be heard" before depriving a person of property, *see Heckman v. Town of Hempstead*, 568 F. App'x 41, 45 (2d Cir. 2014) (summary order), the alleged deprivation in this case occurred after years of litigation and a full trial (*see, e.g.*, Compl., Dkt. 1, 7 ¶ 22, 10 ¶ 30 (describing trial at which JOD was decided, as well as a "March[] 2018 Cross Motion . . . [and] an April 6, 2018 motion in the Appellate Division")). Plaintiff also notes that she was in fact appointed a "free Contempt attorney" when the Court denied her TRO. (*Id.* at 10 ¶ 32.) In light of the extensive process, both at the trial and appellate level, that Plaintiff has already received in state court, Plaintiff's allegation that she was denied a "full fraud hearing" plainly fails to state a claim for deprivation of due process.

8

**II.     Sovereign Immunity**

Plaintiff also makes a number of arguments as to why Defendants are not entitled to immunity, which again are largely recycled from her briefing on the motions to dismiss. (*Compare* MTV, Dkt. 44, at ECF 14–20, *with* Pl.'s MTD Br., Dkt. 32, at 19, 24–25.) Specifically, Plaintiff alleges that the Court erred in finding that the Judicial Defendants[10] are entitled to Eleventh Amendment or sovereign immunity, because their failure to comply with the ADA abrogates that immunity.[11] (MTV, Dkt. 44, at ECF 14–18; *see also* Pl.'s MTD Br., Dkt. 32, at 19–20.)

As the Court wrote in the March 31 M&O, courts apply one of two tests to determine whether the ADA abrogates sovereign immunity. "Some courts have found that a 'Title II claimant [must] establish the violation of a fundamental right' in order to abrogate sovereign immunity, while others have concluded that a 'Title II violation must be motivated by discriminatory animus or ill will based on the plaintiff's disability.'" (*See* March 31 M&O, Dkt. 39, at 11 (quoting *McKnight v. Middleton*, 699 F. Supp. 2d 507, 522 (E.D.N.Y. 2010)).) Plaintiff contends that she has satisfied the conditions for the first test, and that the second test misstates the law. (*See* MTV, Dkt. 44, at ECF 15–18.)[12] With regards to the first test, Plaintiff alleges that she was constructively

---

[10] The Judicial Defendants include all Defendants except Veronica Irwin. (*See* March 31 M&O, Dkt. 39, at 10 n.7.)

[11] Plaintiff contends that her divorce proceedings and the JOD orders within those proceedings are "state activities and services for [the] purposes of Title II," such that they trigger "immunity-piercing provisions of the ADA." (MTV, Dkt. 44, at ECF 23–24.) The cases that Plaintiff cites for this proposition are inapposite: neither *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209–12 (1998), nor *Shelley v. Kraemer*, 334 U.S. 1 (1948), discusses the application of Title II to courts and their decisions; indeed, *Shelley* predates the ADA. Even assuming that these proceedings are "services" for the purposes of the ADA, as discussed above, Plaintiff does not allege exclusion from or discrimination by the services sufficient to abrogate sovereign immunity.

[12] While Plaintiff cites a law review article for the proposition that "neither [the Rehabilitation Act] nor Title II of the ADA imposes any intent requirements when making a disability discrimination claim" (MTV, Dkt. 44, at ECF 17–18 (citation omitted)), courts in this Circuit have recently held that plaintiffs may be required to show that the alleged Title II violation

9

denied her fundamental right of access to the courts because (1) the "state court repeatedly denied her enough time to complete and file needed legal papers despite knowing she was litigating *pro se*" and her disability made her unable to file "key legal filings . . . on the court's schedule," and (2) the state court failed to treat her as a victim of domestic violence and thus as disabled under the ADA and therefore applied the wrong standard to the division of property. (*Id.* at ECF 12–14.)

Plaintiff's allegations that the divorce court failed to grant her extensions despite her *pro se* status and disability fail to show that she was denied a fundamental right. While it is unquestionable that Title II pierces a state's sovereign immunity in cases implicating a plaintiff's fundamental right of access to the courts (*see id.* at ECF 14–15 (citing, *inter alia*, *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004))),[13] Plaintiff has not alleged anything close to a lack of access here. "In the courtroom context, 'meaningful access' has been held to be consistent with the due process principle that, within the limits of practicability, all individuals must be afforded a meaningful opportunity to be heard." *Amato v. McGinty*, No. 17-CV-1280 (GLS) (TWD), 2019 WL 8064011, at *4–5 (N.D.N.Y. Aug. 7, 2019) (finding it unlikely that a plaintiff with PTSD had

---

was "motivated by discriminatory animus or ill will based on the plaintiff's disability." *Russell v. New York*, No. 18-CV-8543 (VSB), 2019 WL 4805687, at *4 (S.D.N.Y. Sept. 30, 2019) (internal quotation marks and citation omitted). (*See also* March 31 M&O, Dkt. 39, at 11.) Plaintiff does not claim to have pled any facts showing animus (*see* MTV, Dkt. 44, at ECF 18), and thus, to the extent that intentional discrimination is required to show a violation of Title II, has failed to make the requisite showing. The Court, however, does not need to, and does not, resolve this issue, because of its finding that Plaintiff has simply failed to sufficiently allege a denial of access to support an ADA claim.

[13] *Lane* involved paraplegic plaintiffs in wheelchairs who were unable to access the courts to answer criminal charges because the county courthouse had no elevator. *Lane*, 541 U.S. 513–14. One of the plaintiffs was forced to crawl up two flights of stairs at his first appearance and was jailed for failure to appear when he refused to do so a second time. *Id.* at 514. As discussed *infra*, Plaintiff, whose complaint describes years of participation in state court litigation, does not allege anything similar to the exclusion from court described in *Lane*.

adequately stated Title II claim where she was denied adjournment of her child custody proceedings because she "d[id] not allege that she was not permitted a reasonable amount of time to prepare for proceedings nor provide any specifics about the nature of the adjournment requested"); *id*. ("A reasonable accommodation is one that gives the disabled person 'meaningful access' to the services sought."). As described above and stated in the March 31 M&O, Plaintiff has a "long history" of litigation, beginning in 2008. (March 31 M&O, Dkt. 39, at 11.) She was represented during some of that litigation, and requested an extension before her 2015 trial not merely because of her disability, but also because she had "released her attorney" and "chose to represent herself pro se at trial to have control over her case." (Compl., Dkt. 1, at 7 ¶ 22, 8 ¶ 25.) According to the Complaint itself, Plaintiff had numerous opportunities to be heard, both at trial and after, and has therefore failed to allege a deprivation of her fundamental right of access to the courts.[14]

---

[14] In both her motion to vacate and reply, Plaintiff cites *Le Grand v. Evan*, 702 F.2d 415 (2d Cir. 1983), for the principle that"[a] litigant who is, due to a disability and to a court's illegal refusal to accommodate it, unable to file papers is effectively denied meaningful access to the courts." (*See* MTV, Dkt. 44, at ECF 15–16; Pl.'s Am. Rep., Dkt. 48, at ECF 8, citing *Le Grand*, 702 F.2d at 418 ("[t]he refusal of a clerk of a court to accept the papers of a litigant seeking to commence an action under a state statute may deprive that litigant of federal constitutional rights.").) But *Le Grand* did not involve a failure to accommodate a disability, and has no relevance to this matter. The plaintiff in *Le Grand* alleged that New York State court clerks had refused to accept his habeas corpus petition and *in forma pauperis* application, and "[had] not state[d] any 'legal' reasons for their refusal," but instead had done so "in bad faith and with malice because they knew [plaintiff] was a convicted murderer and had filed other *pro se* applications in both state and federal court."! 702 F.2d at 416. Here, Plaintiff does not allege that she was prevented from commencing an action, but merely that "the state matrimonial court refused to accept key legal filings because, due to her qualified disability, she was unable to file them on the court's schedule." (Pl.'s Am. Rep., Dkt. 48, at ECF 8 (punctuation omitted).) Plaintiff herself alleges that the state court had a clear "legal" reason to refuse Plaintiff's filings: they were untimely. The state court's adherence to its schedule is plainly unlike the bad-faith refusal of court clerks to even accept Plaintiff's application in *Le Grand*, and did not deprive Plaintiff of her constitutional rights.

Moreover, "[Plaintiff]'s contention that applicable standards should be changed in light of [her] disability . . . is not what Title II requires." *Wiltz v. N.Y. Univ.*, No. 18-CV-123 (GHW) (SDA), 2019 WL 721658, at *6 (S.D.N.Y. Feb. 1, 2019), *report and recommendation adopted* 2019 WL 720700 (Feb. 19, 2019)); *see also Amato*, 2019 WL 8064011, at *4 (finding that, where plaintiff "argue[d] that defendants could have accommodated her disabilities by returning custody to her" and "label[ed] all unfavorable decisions in the underlying child custody proceedings as failures to reasonably her accommodate her PTSD," she "ultimately s[ought] to challenge [] not illegal discrimination against the disabled, but the substance of services provided to h[er]"). Indeed, Plaintiff's disability entitles her neither to her preferred outcome nor to a preferential standard. *See Wiltz*, 2019 WL 721658, at *9 ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally.") (quoting *Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003)). "Title II requires the accommodation of a disabled person only when that person is otherwise entitled, independent of his or her disability, to the public service or benefit at issue." *Id.* at *6 (finding that Plaintiff had failed to state an ADA claim where he had requested and been denied "representation/legal assistance and a request for a protective order" in housing court, as plaintiff "ha[d] not shown that, with or without a disability, he was entitled to [either]") (citing *Harris v. Mills*, 572 F.3d 66, 74 (2d Cir. 2009)).

Plaintiff asserts that sovereign immunity does not apply to her claims because she seeks "prospective" declaratory relief stating that the "policies, practices, procedures and standards Matrimonial Court Defendants apply to her contested JOD lawsuit . . . are 'program activities' governed by and required to comply with 28 C.F.R. §§ 35.130, 35.139 and 35.103," and that "JOD

12

Orders are 'services' as defined by [the] ADA such that rights under the ADA attach."[15] (MTV, Dkt. 44, at ECF 18.) The Court has already addressed Plaintiff's mischaracterization of this relief as "prospective" (*see* March 31 M&O, Dkt. 39, at 13–14), and declines to repeat or elaborate on its prior reasoning. *See Elgalad v. N.Y.C. Dep't of Educ.*, No. 17-CV-4849 (VSB), 2019 WL 4805669, at *4 (S.D.N.Y. Sept. 30, 2019) ("Mere disagreement with this Court's interpretation and analysis of the facts pled is not an appropriate ground for reconsideration.").

### III. Plaintiff's Other Arguments

The Court has already addressed the remainder of Plaintiff's contentions at the motion to dismiss stage. Plaintiff raises in her motion to vacate the same arguments as in her motion to dismiss briefing regarding Defendant Irwin's judicial immunity. (*Compare* MTV, Dkt. 44, at ECF 18–19, *with* Pl.'s MTD Br., Dkt. 32, at 24–25.) The Court, having considered and decided these arguments, again finds that judicial immunity applies. (March 31 M&O, Dkt. 39, at 16–17.)

Plaintiff further contends that the Court should vacate its March 31 M&O because it failed to address the "novel nature" of her argument that the state matrimonial courts fail to apply the correct standard under the ADA to cases in which non-physical domestic violence and disability are alleged. (MTV, Dkt. 44, at ECF 9.) Plaintiff's repeated emphasis on the "novelty" of the issues she raises, however, does not change or implicate the Court's evaluation of the legal issues at play. *Cf.*, *e.g.*, *Turgeon v. Operating Eng'rs, Local No. 98*, 2 F. App'x 176, 180 (2d Cir. 2001)

---

[15] To the extent Plaintiff seeks relief under Section 504 of the Rehabilitation Act, she fails to state a claim because that provision applies only to entities that receive federal funding and Plaintiff does not allege that the divorce courts at issue receive federal money. *See* 29 U.S.C. § 794(a); *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) ("[T]he standard [for alleging] Rehabilitation Act claims is generally the same as for ADA claims, with the additional requirement that defendants must receive federal funding.") (citation omitted).

(summary order) (finding that a plaintiff's assertion that issues in the case were "novel and complex" did not justify nullification of the judgment).

For the reasons discussed above, Plaintiff has failed to make any argument that warrants the "extraordinary remedy" of reconsideration and *vacatur* of the Court's judgment, and therefore her motion to vacate the Court's Memorandum, Order, and Judgment must be denied. *Speedfit LLC v. Chapco Inc.*, No. 15-CV-1323 (PKC) (RLM), 2020 WL 758824, at *2 (E.D.N.Y. Feb. 14, 2020).

## CONCLUSION

For the reasons discussed above, Plaintiff's motion to vacate the March 31, 2020 Memorandum, Order, and Judgment is denied.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: June 22, 2020
       Brooklyn, New York